UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT and MARYANNE BRAY, husband and wife; KAREN WARSHAW, a single woman, on their own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LUMBER LIQUIDATORS INC.,<br><br>Defendant. | C.A. No. |

## CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ....................................................................................1

II.  JURISDICTION ....................................................................................4

III.  PARTIES ..............................................................................................5

IV.  FACTUAL ALLEGATIONS ...............................................................5

    A.  Lumber Liquidators Represents that its Laminate Wood Flooring Products Meet California's Strict Emissions Standards for Products it Sells in Every State ................................................................5

    B.  California's Formaldehyde Standards...........................................6

    C.  Lumber Liquidators' Laminate Wood Flooring Products Do Not Comply with CARB Limits ........................................................7

    D.  Lumber Liquidators Has Continually Made Knowingly False Representations that Formaldehyde Levels in its Laminate Wood Flooring Were CARB Compliant ..................................................9

V.  FACTS RELATING TO NAMED PLAINTIFFS ...........................15

    A.  Scott and Maryanne Bray..........................................................15

    B.  Karen Warshaw.........................................................................16

VI.  CLASS ACTION ALLEGATIONS ..................................................18

VII.  CAUSES OF ACTION ......................................................................20

    COUNT I:  FRAUDULENT CONCEALMENT ............................20

    COUNT II:  VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. §§ 2301, *ET SEQ.*..........................22

    COUNT III:  VIOLATION OF MASS. GEN. LAWS CH. 93A......................23

    COUNT IV:  BREACH OF EXPRESS WARRANTY ...................23

    COUNT V:  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY..........24

    COUNT VI:  DECLARATORY RELIEF .......................................25

VIII.   PRAYER FOR RELIEF ..................................................................................................26

IX.   DEMAND FOR JURY TRIAL .........................................................................................27

## I.    INTRODUCTION

1.     Defendant Lumber Liquidators, Inc. has been selling composite laminate flooring products that emit formaldehyde at levels known to pose serious health risks.  For nearly two years, and possibly longer, Lumber Liquidators has known that flooring products it has manufactured in China that are intended to be used in people's homes emit unsafe levels of formaldehyde.  Nonetheless, Lumber Liquidators has continued to specifically and falsely label these products as being compliant with all limits set by the California Air Resources Board ("CARB") – which it correctly touts as being among the most strict emissions regulations in the nation.  As a result, consumers throughout the country, including people in Massachusetts, have been buying flooring products from Defendant that are unsafe and should not be distributed or sold, and have been unwittingly installing these dangerous products in their homes.

2.     Laminate wood flooring is generally composed of a base layer of pressed composite wood (particle board or medium-density fiberboard), which is a mixture of sawdust or wood particles bonded together with glue or resin.  The base layer is covered with a veneer or other material such as a photographic image of wood, affixed as a decorative surface.

3.     Formaldehyde is a common ingredient in the glue used in the laminate flooring base layer.  If used in low levels, the formaldehyde will quickly dissipate during installation.  However, if used in higher levels, the formaldehyde is released as a gas that emanates from the flooring over time.  Long-term exposure to formaldehyde is linked to increased risk of cancer of the nose and sinuses, nasopharyngeal and oropharyngeal cancer, lung cancer, and leukemia.  Formaldehyde also causes burning eyes, nose and throat irritation, coughing, headaches, dizziness, joint pain, and nausea.  It has also been linked to the exacerbation of asthma in formaldehyde-sensitive individuals and poses a particular acute risk to children.

4.      Lumber Liquidators supervises and controls the manufacturing of composite laminate wood flooring products in several mills in China.  Lumber Liquidators also packages, distributes, markets, and/or sells laminate wood flooring products that have been manufactured in China to consumers in Massachusetts.

5.      From October 2013 through November 2014, three accredited laboratories tested the formaldehyde emissions of laminate wood flooring from several nationwide retail outlets, including Home Depot, Lowe's, and Lumber Liquidators. Of the dozens of products tested, by far the highest formaldehyde levels were found in the laminate wood flooring sold by Lumber Liquidators that was produced in China.  The levels of formaldehyde gas emitted by these Chinese-made Lumber Liquidators products were several times the maximum CARB limits and exceeded the standards promulgated in the Toxic Substances Control Act, 15 U.S.C. § 2601 *et seq*. (title VI – formaldehyde Standards of Composite Wood Products).  Similar products manufactured in North America generally had much lower formaldehyde levels that complied with the formaldehyde emission standards promulgated by CARB.  Similar products tested from Lumber Liquidators' competitors also showed significantly lower formaldehyde levels that generally complied with the CARB formaldehyde emission standards.  The list of products that have been tested and found to exceed the CARB limit for formaldehyde emissions is set forth in paragraph 28 below.

6.      Despite this discrepancy, Lumber Liquidators did not differentiate between its domestically manufactured floor laminates and those made in China.  Defendant's labels on its Chinese laminate wood flooring products state that the products comply with strict formaldehyde emission standards promulgated by CARB by stating "California 93120 Phase 2 Compliant Formaldehyde."

7.      In 2014 and early 2015, 60 Minutes news conducted an independent investigation into Lumber Liquidators' Chinese-made flooring products.  Investigators purchased 31 boxes of various Chinese-made flooring products from various Lumber Liquidators stores around the country and sent the sample for testing at two certified labs.  Of the 31 samples, only one was compliant with CARB formaldehyde emissions standards.  "Some were more than 13x over the California limit."[1]

8.      60 Minutes also sent undercover investigators to three different mills in China that manufacture laminates and flooring on behalf of Lumber Liquidators.  60 Minutes reported that:

> Employees at the mills openly admitted that they use core boards with higher levels of formaldehyde to make Lumber Liquidators laminates, saving the company 10-15 percent on the price.  At all three mills they also admitted [to] falsely labeling the company's laminate flooring as CARB [compliant].[2]

9.      Lumber Liquidators does not give consumers any warnings about unlawful formaldehyde levels in its laminate wood flooring products.  Instead, along with its product labels, it represents on its website and its warranties that its flooring products comply with strict formaldehyde standards.  Lumber Liquidators has made false and misleading statements that its flooring products comply with CARB formaldehyde standards, and the even more stringent European formaldehyde standards.  Lumber Liquidators' website falsely states, "we not only comply with laws-we exceed them."  "Highest Quality Flooring. GUARANTEED."[3]

---

[1] *Lumber Liquidators Linked to Health and Safety Violations*, 60 Minutes (Mar. 1, 2015), available at http://www.cbsnews.com/news/lumber-liquidators-linked-to -health-and-safety-violations/ (last visited March 4, 2015).

[2] *Id.*

[3] http://www.lumberliquidators.com/11/flooring/quality?WT.ad-GLOBAL FOOTER Quality (last visited on March 2, 2015, Page unavailable as of March 4, 2015).

10.     Lumber Liquidators has continually sold these products to Massachusetts customers at its 10 retail stores in Massachusetts, through its retail website, www.lumberliquidators.com, and using its toll free customer service telephone line.

11.     Plaintiffs purchased and installed a Lumber Liquidators product that was manufactured in China, labeled as being CARB compliant, and that was of a type found to have formaldehyde levels that exceed CARB limits.  Plaintiffs seek to represent themselves and similarly situated persons who have purchased Defendant's laminate wood flooring products that were manufactured in China, labeled as CARB compliant, and sold to consumers in Massachusetts ("the putative Class").  Plaintiffs seek restitution of monies they and the putative Class spent on Defendant's flooring products, the cost of replacing the products, injunctive relief enjoining Defendant's ongoing unlawful, unfair, and fraudulent business practices, and damages on behalf of themselves and the putative Class.

12.     Plaintiffs have sent Defendant a demand letter identifying violations of Mass. Gen. Laws ch. 93A.  In the event Defendant does not take the appropriate actions itemized in the notice within 30 days, Plaintiffs intend to amend their complaint to add a claim for damages under the Act.

## II.     JURISDICTION

13.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) in that the matter is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and members of the Class are citizens of a State different from the Defendant.

14.     This Court has personal jurisdiction over the parties in this action by the fact that Defendant is a corporation licensed to do business in the state of Massachusetts and actively conducts business throughout Massachusetts.

010503-11  764629 V1

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) inasmuch as the unlawful practices are alleged to have been committed in this District, Defendant regularly conducts business in this District, and the named Plaintiffs reside in this District.

### III.     PARTIES

16.     Plaintiffs Scott Bray and Maryanne Bray are residents of Hanson, Massachusetts and are consumers within the meaning of Massachusetts General Laws Chapter 93A.

17.     Plaintiff Karen Warshaw is a resident of Brookline, Massachusetts and is a consumer within the meaning of Massachusetts General Laws Chapter 93A.

18.     Defendant Lumber Liquidators Inc. is a Delaware corporation with its headquarters and principal place of business in Toano, Virginia.  Lumber Liquidators, Inc. distributes, markets, and/or sells laminate wood flooring products in Massachusetts.

### IV.     FACTUAL ALLEGATIONS

**A.     Lumber Liquidators Represents that its Laminate Wood Flooring Products Meet California's Strict Emissions Standards for Products it Sells in Every State**

19.     The emissions limits set by the California Air Resources Board ("CARB") are among the most comprehensive and exacting in the country.  These standards have served as a model for national standards being considered by the Environmental Protection Agency.

20.     Defendant invokes these CARB standards and represents to consumers on its website, on its product packaging, and in various other materials that its laminate wood flooring products meet the CARB standards for formaldehyde emissions and are therefore safe. Defendant unequivocally states that though CARB only legally governs products sold in the state of California, Lumber Liquidators ensures that its composite flooring products meet the CARB standard no matter where they are sold.

21.     Lumber Liquidators' website states as follows:

Is Lumber Liquidators Compliant with the California law?

**Laminate and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified by a Third Party Certifier approved by the State of California to meet the CARB standards.** The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their products conform to the specified regulation limits. The Third Party Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified.

Does CARB only apply to California?

Though it currently applies only to products sold in California, **Lumber Liquidators made a decision to require all of our vendors to comply with the California Air Resources Board regulations regardless of whether we intended** to sell the products in California or any other state/country.

What extra steps does Lumber Liquidators take to ensure compliance?

In addition to the California Air Resources Board requirements, **Lumber Liquidators regularly selects one or more finished products from each of its suppliers and submits them for independent third-party lab testing.** This is done as a monitoring activity to validate ongoing quality control.[4]

**B.     California's Formaldehyde Standards**

22.     In 1988, the State of California officially listed Formaldehyde (gas) as a chemical known to cause cancer.

23.     In 1992, the CARB formally listed formaldehyde as a Toxic Air Contaminant in California with no safe level of exposure.

24.     The CARB approved the Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products in April 2007.  The formaldehyde

---

[4] http://www.lumberliquidators com/11/flooring/ca-air-resources-board-regulations?Wt.ad—GLOBAL_FOOTER_CaliRegCARB (last visited on March 4, 2015) (emphasis in original).

emission standards became effective January 2009 and set decreasing limits in two Phases. Cal. Code Regs., tit. 17, § 93120.2(a).

25.    The CARB Regulations apply to composite wood ("laminate") products including flooring. Cal Code Regs., tit. 17, § 93120.2(a).

26.    The CARB Phase 1 Emission Standard for MDF in effect from January 1, 2009 to December 31, 2010, limited formaldehyde emissions to 0.21 parts per million ("ppm"). The Phase 2 Emission Standard for MDF dictates that as of January 1, 2011, MDF flooring products such as those involved in this action must emit no more than 0.11 parts per million ("ppm") of formaldehyde. The CARB Phase 1 Emission Standard for Thin MDF, which was in effect from January 1, 2009 to December 31, 2011, limited formaldehyde emissions to 0.21 ppm. The CARB Phase 2 Emission Standard for Thin MDF dictates that as of January 1, 2012, thin MDF flooring products such as those involved in this action must emit no more than 0.13 ppm of formaldehyde. Cal. Code Regs., fit. 17, § 93120.2(a). (Hereinafter, the formaldehyde emission standards for both MDF and Thin MDF will be referred to as the "CARB limit.")

## C.    Lumber Liquidators' Laminate Wood Flooring Products Do Not Comply with CARB Limits

27.    As stated in paragraphs 5 and 7 above, numerous Lumber Liquidators' composite wood flooring products that were manufactured in China have been tested by several different laboratories and have been found to have dangerous levels of formaldehyde that far exceed CARB limits and that pose dangers to human health.

28.    Defendant supervises and/or controls the manufacturing and packaging of laminate wood flooring products in China that Defendant then distributes, markets, and/or sells in California. Those laminate wood flooring products contain formaldehyde and emit

- 7 -

formaldehyde gas at levels that exceed, and sometimes grossly exceed, the CARB limit.  Those laminate wood flooring products include the following:

a.      8 mm Bristol County Cherry Laminate Flooring

b.      8 mm Dream Home Nirvana French Oak Laminate Flooring

c.      8 mm Dream Home Nirvana Royal Mahogany Laminate Flooring

d.      12 mm Dream Home Ispiri Americas Mission Olive Laminate Flooring

e.      12 mm Dream Home Ispiri Chimney Tops Smoked Oak Laminate Flooring

f.      12 mm Dream Home Ispiri Poplar Forest Oak Laminate Flooring

g.      12 mm Dream Home Kensington Manor Antique Bamboo Laminate Flooring

h.      12 mm Dream Home Kensington Manor Cape Doctor Laminate Flooring

i.      12 mm Dream Home Kensington Manor Fumed African Ironwood Laminate Flooring

j.      12 mm Dream Home Kensington Manor Glacier Peak Poplar Laminate Flooring

k.      12 mm Dream Home Kensington Manor Golden Teak Laminate Flooring

l.      12 mm Dream Home Kensington Manor Handscraped Imperial Teak Laminate Flooring (SKU 10029601)

m.      12 mm Dream Home Kensington Manor Handscraped Imperial Teak Laminate Flooring (SKU 10023958)

n.      12 mm Dream Home Kensington Manor Handscraped Summer Retreat Teak Laminate Flooring

o.      12 mm Dream Home Kensington Manor Sandy Hills Hickory Laminate Flooring

p.      12 mm Dream Home Kensington Manor Tanzanian Wenge Laminate Flooring

q.      12 mm Dream Home Kensington Manor Warm Springs Chestnut Laminate Flooring

r.      12 mm Dream Home St. James African Mahogany Laminate Flooring

s.      12 mm Dream Home St. James Blacksburg Barn Board Laminate Flooring

    t.      12 mm Dream Home St. James Brazilian Koa Laminate Flooring

    u.      12 mm Dream Home St. James Chimney Rock Charcoal Laminate Flooring

    v.      12 mm Dream Home St. James Cumberland Mountain Oak Laminate Flooring

    w.      12 mm Dream Home St. James Golden Acacia Laminate Flooring

    x.      12 mm Dream Home St. James Nantucket Beech Laminate Flooring

    y.      12 mm Dream Home St. James Oceanside Plank Bamboo Laminate Flooring

    z.      12 mm Dream Home St. James Vintner's Reserve Laminate Flooring

    aa.      15 mm Dream Home St. James Sky Lakes Pine Laminate Flooring

29.      CARB regulations apply to all of the above listed flooring products.

30.      On information and belief, each of the Lumber Liquidators' laminate wood flooring products listed in paragraph 28 above are manufactured in China using a common formula, design, or process.

31.      On information and belief, each of the Lumber Liquidators' laminate wood flooring products listed in paragraph 28 above emit formaldehyde gas at levels that exceed the CARB limits.

**D.    Lumber Liquidators Has Continually Made Knowingly False Representations that Formaldehyde Levels in its Laminate Wood Flooring Were CARB Compliant**

32.      After the dangerous formaldehyde levels in Lumber Liquidators' products were featured on the news program "60 Minutes," Lumber Liquidator responded by posting a letter from its Chairman on its website stating:

> Let me make one thing very clear – our laminate products, all of our products, are 100% safe.
>
> …
>
> We comply with applicable regulations regarding our products, including California standards for formaldehyde emissions for composite wood products – the most stringent rules in the country. We take our commitment to safety even further by employing

- 9 -

compliance personnel around the world and utilizing the latest in
cutting- edge technology to provide our customers with top quality
and high value flooring.[5]

33.     In addition, the product packaging for Lumber Liquidators' laminate wood

flooring states: "CARB . . . CALIFORNIA 93120 Phase 2 Compliant Formaldehyde."  On

information and belief, this statement is presented on all Lumber Liquidators' laminate flooring

product packaging regardless of whether the flooring inside the packaging complies with the

CARB standards.

34.     Lumber Liquidators' purchase orders come with a warranty stating that the

customer's purchased flooring products comply "with all applicable laws, codes and

regulations," and "bear all warnings, labels, and markings required by applicable laws and

regulations."

35.     Instead of warning consumers about formaldehyde emissions from its laminate

wood flooring products, Lumber Liquidators' website states that it has Third Party Certifiers

approve its flooring products to meet CARB standards.

Regulations and Lumber Liquidators' Compliance

The California Air Reform Bill (CARB) requires that products
containing Hardwood Plywood Veneer Core (HWP-VC),
Hardwood Plywood Composite Core (HWP-CC), Particleboard
and MDF be tested for emissions and products not meeting the
strict standards for emissions may not be sold in California.

The Environmental Protection Agency has drafted national
standards for formaldehyde emissions in composite wood products
that are similar to those of California. Those standards have not yet
been enacted.

All laminates and engineered flooring products sold by Lumber
Liquidators are purchased from mills whose production method
has been certified by a Third Party Certifier approved by the State

---

[5] http://www.lumberliquidators.com/sustainability/60-minutes-letter-from-tom/ (last visited
March 4, 2015).

010503-11  764629 V1

of California to meet the CARB standards. The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their products conform to the specified formaldehyde-emission limits. The Third Party Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified. Though it currently applies only to products sold in California, Lumber Liquidators made a decision to require all of our suppliers to comply with CARB regardless of whether we intended to sell the products in California or any other state/country. In addition, our suppliers manufacture their products in accordance with the European standard which has stricter guidelines than the California. In addition to the CARB requirements, Lumber Liquidators regularly selects one or more products from each of its suppliers and submits them for independent third-party lab testing. This is done as a monitoring activity to validate ongoing compliance.[6]

36.     Lumber Liquidators materially misrepresents the safety of its laminate wood flooring products by advertising and representing that its flooring products are compliant with the CARB limit when in fact they are not.

37.     Lumber Liquidators makes the material omission of failing to tell consumers that they are buying laminate wood flooring products with unlawfully high levels of formaldehyde.

38.     These laminate wood flooring products have been sold by Defendant for use in homes in Massachusetts for more than three years.

39.     Defendant continues to distribute and sell its laminate wood flooring products to customers in Massachusetts with the representation that they are CARB compliant, even though they are not.

---

[6]

http://www.lumberliquidators.com/ll/flooring/Flooring101?Wt.ad=RIGHTNAV_Flooring101
(last visited March 4, 2015).

40.     On information and belief, at all times relevant to this action, Lumber Liquidators has knowingly misrepresented its laminate wood flooring products as CARB compliant and knowingly failed to disclose to consumers the unlawful levels of formaldehyde emissions from its laminate wood flooring products.

41.     At the same time that Defendant made public statements to consumers that the laminate wood products it sells are sourced from mills whose production methods are CARB compliant, that the products conform to CARB's specified formaldehyde emission limits, and the measures Lumber Liquidators takes to ensure full compliance by its suppliers, Defendant acknowledged the opposite to the SEC, stating, "While our suppliers agree to operate in compliance with applicable laws and regulations, including those relating to environmental and labor practices, ***we do not control our suppliers***.  Accordingly, we cannot guarantee that they comply with such laws and regulations or operate in a legal, ethical and responsible manner. Violation of environmental, labor or other laws by our suppliers or their failure to operate in a legal, ethical and responsible manner, could … expose us to legal risks as a result of our purchase of product from non-compliant suppliers."[7]

42.     Despite its stated concern that its suppliers might not comply with environmental regulations, Defendant has failed to sufficiently exercise ̄ its quality control over those suppliers to ensure that they comply with CARB standards, and Defendant continues to sell to Massachusetts consumers laminate wood flooring products that Defendant obtains from those suppliers.

---

[7] Lumber Liquidators February 25, 2014 10-K at p. 14, http://investors.lumberliquidators.com/index.php?o=25&s=127 (emphasis added).  In the same filing, Lumber Liquidators acknowledges that it oversees quality control in its Chinese mills: "We are able to set demanding specifications for product quality and our own quality control and assurance teams are on-site at the mills, coordinating inspection and assurance procedures."  *Id.* at p. 5.

43.     On June 20, 2013, the news website *Seeking Alpha* published a lengthy article based on a letter to the California Air Resources Board.  The letter and article documented high formaldehyde levels in Chinese-made laminate flooring sold by Lumber Liquidators, as shown by tests a certified laboratory conducted on three samples of Chinese-made laminate flooring sold by Lumber Liquidators.  Enclosed with the letter were the actual test results showing that the tested product, Mayflower 5/16" x 5" Bund Birch Engineered, emits three and one-half times the maximum formaldehyde emission level.  The letter notes that Lumber Liquidators nonetheless labeled the product as being CARB compliant.

44.     On information and belief, high formaldehyde content resins and glues are less expensive and dry more quickly than low formaldehyde glues and resins.  By using high formaldehyde content resins and glues rather than low formaldehyde content resins and glues, Lumber Liquidators' Chinese manufacturers are able to produce laminate wood flooring more quickly and at higher volumes thereby reducing costs and generating greater profits for Lumber Liquidators.

45.     On or about November 26, 2013, a putative federal securities class action lawsuit was filed against Lumber Liquidators in the United States District Court in the Eastern District of Virginia based on drops in the stock price following the *Seeking Alpha* article and its allegations concerning the formaldehyde emissions from Defendant's laminate wood flooring products. *Kiken v. Lumber Liquidators Holdings, Inc., et al.*, No. 4:2013-cv-00157 (E.D. Va.).  This case is currently pending.  Lumber Liquidators was made aware during the pendency of this and other lawsuits of complaints and allegations that its laminate wood flooring products from China emit formaldehyde gas at levels that violate the CARB limit.

46.     Numerous Lumber Liquidators customers have posted internet complaints on Defendant's website concerning formaldehyde emissions, including Deborah of North Fork, California who posted on the Consumer Affairs website on September 11, 2014:

> We spent thousands of dollars and went with the LL recommended professional installer... the product we were sold was supposedly Made in the USA--nope, China. One of my children cannot walk barefoot on the floor because he will blister from the formaldehyde content. We saved for years for this floor, it will need to be replaced. Please RUN to another dealer. This company does not care about the customer one bit. This has been a devastating blow to our family.[8]

47.     Based on lawsuits, articles, and blog posts, Defendant knew or should have known that its laminate wood flooring products were not compliant with CARB standards. Despite this knowledge, Defendant failed to reformulate its flooring products so that they are CARB compliant or to disclose to consumers that these products emit unlawful levels of formaldehyde.  Instead, Defendant has sold and continues to sell laminate wood flooring products in Massachusetts that exceed the CARB limit while continually representing to consumers that those products are CARB compliant.

48.     In light of the false representations Lumber Liquidators has made regarding formaldehyde levels, and in light of the health risks posed by formaldehyde, Plaintiffs and members of the Class would reasonably fear for their safety by allowing the laminate flooring to remain in their homes.  It would therefore be reasonably prudent to incur the cost of replacing the laminate flooring rather than continue to incur the risks posed by the laminate flooring that may contain high levels of formaldehyde.

---

[8] http://www.Consumeraffairs.com/homeowners/lumber liquidators.html December 2, 2014.

## V.     FACTS RELATING TO NAMED PLAINTIFFS

### A.     Scott and Maryanne Bray

49.     On June 30, 2014, Plaintiffs Scott and Maryann Bray purchased 1600 square feet of 12 mm Dream Home St. James Brazilian Koa Laminate Flooring, and 320 square feet of 12 mm Dream Home Kensington Manor Warm Springs Chestnut Laminate Flooring at a Lumber Liquidators store located in Braintree, Massachusetts.  On information and belief, each of these flooring products was produced at a laminate mill in China.

50.     The Brays purchased the laminate flooring for the purpose of having it installed in their home.  Their daughter was 8 months old at the time they purchased the laminate flooring. The Brays deliberately chose to replace the carpeting in their home with laminate flooring because they believed that laminate flooring would be healthier for their child.

51.     Mr. Bray has a significant amount of experience with building materials.  He was aware of risks inherent in formaldehyde and of risks that building products could contain formaldehyde and other dangerous chemicals.  He was also aware that California has the most exacting emission regulations in the country.  He therefore specifically set out to ensure that the composite flooring he would purchase was safe and did not have high levels of formaldehyde or other chemicals.

52.     Prior to purchasing the laminate flooring from Lumber Liquidators, Mr. and Mrs. Bray viewed Lumber Liquidators' website and compared products from various retailers.  The Brays saw and specifically noted representations Lumber Liquidators made regarding the safety and compliance of its products – including the claim that the composite flooring products complied with California regulations.

53.     After viewing products on the Lumber Liquidators website, the Brays went to the Lumber Liquidators retail store and purchased the two types of composite laminate flooring.  Mr.

Bray specifically noted the label on each of the products stating "California … Phase 2 Compliant for formaldehyde."

54.     Mr. and Mrs. Bray relied on the representations that the laminate flooring they were purchasing did not contain unsafe levels of formaldehyde.  They would not have purchased the products absent this or a similarly equivalent representation.

55.     At the time the Brays purchased these laminate wood flooring products, Lumber Liquidators' representation that the products were compliant with CARB formaldehyde emission standards was false.

56.     At the time of the purchase, Lumber Liquidators also failed to inform the Brays that the laminate wood flooring products they purchased actually exceeded the CARB formaldehyde emission limit and that formaldehyde is a chemical known to cause cancer.

57.     Mr. Bray and his brother, who is a professional contractor, installed the composite flooring in the Bray's home over the course of approximately two weeks.

58.     On March 1, 2015, the Brays learned for the first time that the representations Lumber Liquidators made regarding the formaldehyde compliance of its product may have been false.  In light of the risks to their health, and especially to the health of their daughter, they now must consider incurring the cost of having their flooring replaced rather than to incur the health risks posed by the formaldehyde levels found in Lumber Liquidators' China-made products.

59.     Had the Lumber Liquidators' laminate wood flooring been CARB compliant as claimed, the Brays would have been satisfied with their purchase and would keep the laminate flooring installed in their home.

**B.     Karen Warshaw**

60.     In approximately February 2012, Plaintiff Karen Warshaw purchased 500 square feet of 12 mm Dream Home St. James Nantucket Beech Laminate Flooring at a Lumber

- 16 -

Liquidators store located in West Roxbury, Massachusetts.  On information and belief, the flooring was produced at a laminate mill in China.

61.     Ms. Warshaw purchased the laminate flooring for the purpose of having it installed in her home.  Prior to purchasing the laminate flooring from Lumber Liquidators, Ms. Warshaw viewed Lumber Liquidators' website and compared products from various retailers. She saw and specifically noted several representations Lumber Liquidators made regarding the safety and compliance of its products.  She particularly noted the representation that the composite products complied with the most strict emissions standards as she was concerned that composite products may contain dangerous chemicals.

62.     Ms. Warshaw relied on the representations that the laminate flooring she was purchasing did not contain unsafe levels of formaldehyde.  She would not have purchased the product absent this or a similarly equivalent representation.

63.     At the time that Ms. Warshaw purchased this laminate wood flooring, Lumber Liquidators' representation that the product was compliant with CARB formaldehyde emission standards was false.

64.     At the time of the purchase, Lumber Liquidators also failed to inform Ms. Warshaw that the laminate wood flooring product she purchased actually exceeded the CARB formaldehyde emission limit and that formaldehyde is a chemical known to cause cancer.

65.     In February or March 2012, a person sent by Lumber Liquidators delivered and installed the flooring in Ms. Warshaw's home.

66.     On March 1, 2015, Ms. Warshaw learned for the first time that the representations Lumber Liquidators made regarding the formaldehyde compliance of its product may have been false.  In light of the risks to her health, she now intends to incur the cost of having her flooring

replaced rather than to incur the health risks posed by the formaldehyde levels found in Lumber Liquidators' China-made products.

67.     Had the Lumber Liquidators' laminate wood flooring been CARB compliant, Ms. Warshaw would have been sufficiently satisfied with her purchase so as to keep the laminate flooring in her home.

### VI.     CLASS ACTION ALLEGATIONS

68.     Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

69.     Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a Class consisting of:

> All persons who purchased from Defendant in Massachusetts one or more laminate wood flooring products that were for their personal use rather than for resale or distribution, that were manufactured in China, and that were advertised as being CARB compliant.

70.     Excluded from the Class are governmental entities, Defendant, its affiliates and subsidiaries, Defendant's current or former employees, officers, directors, agents, representatives, their family members, the members of this Court and its staff.

71.     Plaintiffs do not know the exact size or identities of the members of the proposed Class, since such information is in the exclusive control of Defendant.  Plaintiffs believe that the Class encompasses many hundreds and perhaps thousands of individuals whose identities can be readily ascertained from Defendant's books and records.  Therefore, the proposed Class is so numerous that joinder of all members is impracticable.

72.     Based on the size of the modifications at issue, Plaintiffs believe the amount in controversy exceeds $5 million.

73.     All members of the Class have been subject to and affected by the same conduct. All purchased laminate wood flooring products from the Defendant that were falsely advertised

- 18 -

as being known to be compliant with CARB standards for formaldehyde and were therefore safe to install in homes or businesses. Instead, the levels of formaldehyde in the flooring products were, at a minimum, unknown and in many cases emitting unlawful levels of formaldehyde. The lack of monitoring to ensure CARB compliance and the resulting lack of CARB compliance was not disclosed to any Class members. There are questions of law and fact that are common to the Class, and predominate over any questions affecting only individual members of the Class. These questions include, but are not limited to, the following:

a. Whether Lumber Liquidators properly and adequately monitored their Chinese manufacturing plants to ensure CARB compliance;

b. Whether Lumber Liquidators' laminate wood flooring products that were manufactured in China and sold in California exceed the CARB limit;

c. Whether Lumber Liquidators falsely labeled and advertised its Chinese-manufactured laminate wood flooring products as being CARB compliant;

d. Whether any false representations regarding CARB compliance were made knowingly and willfully;

e. Whether Lumber Liquidators concealed and omitted material facts from its communications with and disclosure to all Class members regarding the levels of formaldehyde in its laminate wood flooring products;

f. Whether Lumber Liquidators breached express warranties to Class members regarding its laminate wood flooring products;

g. Whether Lumber Liquidators breached implied warranties of merchantability regarding its laminate wood flooring products;

h. Whether the above practices caused Class members to suffer injury; and

i.      The proper measure of damages and the appropriate injunctive relief.

74.     The claims of the individual named Plaintiffs are typical of the claims of the Class and do not conflict with the interests of any other members of the Class.

75.     The individual named Plaintiffs will fairly and adequately represent the interests of the Class.  They are committed to the vigorous prosecution of the Class's claims and have retained attorneys who are qualified to pursue this litigation and have experience in class actions – in particular, consumer protection actions.

76.     A class action is superior to other methods for the fast and efficient adjudication of this controversy.  Each Class member is entitled to restitution of the price of the laminate wood flooring product, and the cost of installation and removal of the unlawfully sold flooring products.  The damages suffered by individual Class members are small compared to the expense and burden of individual prosecution of this litigation.  Individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit against Defendant to recover damages stemming from Defendant's unfair and unlawful practices.

77.     This putative class action meets the requirements of Fed. R. Civ. P. 23(b)(2) and (b)(3).

## VII.    CAUSES OF ACTION

### COUNT I

### FRAUDULENT CONCEALMENT

78.     Plaintiffs re-allege and incorporate all paragraphs above as though fully set forth herein.

79.     Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class described above.

010503-11   764629 V1

80.     Lumber Liquidators concealed and suppressed material facts concerning the content of formaldehyde in its Chinese-made composite flooring products.

81.     Defendant had a duty to disclose the true content of formaldehyde in its Chinese-made composite flooring products because it was known and/or accessible only to the Defendant, who had superior knowledge and access to the facts, and the Defendant knew it was not known to or reasonably discoverable by Plaintiffs and the Class.  These omitted and concealed facts were material because they directly impact the safety of the flooring products.  Whether composite flooring was manufactured with levels of formaldehyde that can pose significant health risks is a material safety concern.

82.     Defendant actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits, and did so at the expense of Plaintiffs and the Class.

83.     On information and belief, Lumber Liquidators has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Class and conceal material information regarding the levels of formaldehyde that exist in its Chinese-made composite flooring products.

84.     Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Class's actions were justified.  Lumber Liquidators was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Class.

85.     Because of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained damage because they purchased and retained flooring products that they would not have purchased or installed in their homes had Defendant timely disclosed the fact that the products were not compliant with CARB standards.

86.     Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class's rights and well-being to enrich itself.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT II

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. §§ 2301, *ET SEQ.*

87.     Plaintiffs re-allege and incorporate all paragraphs above as though fully set forth herein.

88.     Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class described above.

89.     Plaintiffs and the other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

90.     Lumber Liquidators is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4) – (5).

91.     Lumber Liquidators' flooring that was purchased separate from the initial construction of the structure into which it was to be installed constitutes a "consumer product" within the meaning of 15 U.S.C. § 2301(1).

92.     Lumber Liquidators' express warranties and written affirmations of fact regarding the nature of the flooring, *i.e.*, that the flooring was in compliance with CARB formaldehyde standards, constitutes a written warranty within the meaning of 15 U.S.C. § 2301(6).

93.     Lumber liquidators breached their warranties by manufacturing, selling, and/or distributing flooring products with levels of formaldehyde that exceed the CARB standards, or

by making affirmative representations regarding CARB compliance without knowledge of its truth.

94.     Lumber Liquidators' breach deprived Plaintiffs and the other Class members of the benefit of their bargains.

95.     The amount in controversy of Plaintiffs' individual claims exceeds the value of $25.  In addition, the amount in controversy exceeds the value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this action.

96.     Defendant has been notified of its breach of written warranties and has failed to adequately cure those breaches.  As a direct and proximate result of Defendant's breaches of its written warranties, Plaintiffs and the other Class members sustained damages in amounts to be determined at trial.

## COUNT III

### VIOLATION OF MASS. GEN. LAWS CH. 93A

**[Plaintiffs have sent Defendant a notification and demand letter as required under the Act and intend to amend their complaint to add a claim for violations of Mass. Gen. Laws ch. 93A absent a bona fide and adequate offer of settlement within the time provided by the Act.]**

## COUNT IV

### BREACH OF EXPRESS WARRANTY

97.     Plaintiffs re-allege and incorporate all paragraphs above as though fully set forth herein.

98.     Throughout the Class Period, Lumber Liquidators has expressly warranted that its laminate wood flooring products comply with CARB formaldehyde standards and all other applicable laws and regulations.

99.     Defendant's express warranty that its laminate wood flooring products comply with the CARB standards appears on every package of laminate wood flooring Defendant sells or has sold in Massachusetts, including those sold to Plaintiffs and to all Class members.  This express warranty and other substantially similar warranties representing that all of its composite flooring products contain safe levels of formaldehyde also appears on Defendant's website, product invoices, and instruction materials.

100.    Lumber Liquidators' warranties became part of the basis of the bargain in selling laminate wood flooring products to Plaintiffs and Class members.

101.    Lumber Liquidators breached these express warranties by selling and/or distributing the laminate wood flooring products, which fail to comply with the CARB standards.

102.    Plaintiffs and members of the Class paid money for the laminate wood flooring and paid to have the flooring installed in their homes, work, and other spaces.  However, Plaintiffs and the members of the Class did not obtain the full value of the advertised products. If Plaintiffs and other members of the Class had known the true nature of the flooring products, that the products emitted unlawful levels of a cancer-causing chemical, they would not have purchased the laminate wood flooring products.

103.    As a result of this breach, Plaintiffs and the members of the Class suffered injury and deserve to be compensated for the damages they suffered.

104.    Plaintiffs and the Class are therefore entitled to recover compensatory damages, declaratory relief, and other relief as specifically prayed for herein.

## COUNT V

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

105.    Plaintiffs re-allege and incorporate all paragraphs above as though fully set forth herein.

- 24 -

106.    Implied in the purchase of the composite flooring products by Plaintiffs and the Class is the warranty that the purchased products are legal, safe, and can lawfully be sold and possessed.

107.    Defendant knew or reasonably should have known that its Chinese-made composite flooring products were unlawful for sale pursuant to the Toxic Substance Control Act, 15 U.S.C. § 2601 *et seq.*

108.    When Defendant sold these products, it implicitly warranted that the products were merchantable in that they were legal and could be lawfully possessed and/or sold.

109.    No reasonable consumer would knowingly purchase a flooring product that is toxic, harmful, and illegal to own or possess.

110.    Lumber Liquidators' Chinese-made composite flooring products are unfit for the ordinary purpose for which they were intended.  These products are illegal, mislabeled, and economically worthless.

111.    As a result, Plaintiffs and the Class were injured through their purchase of unsuitable, useless, illegal, and unsellable products.

112.    Plaintiffs and the Class were damaged in the amounts they paid for the Chinese-made composite flooring, the amounts they paid to have it installed, and the amounts they now must pay to have it removed.

## COUNT VI

### DECLARATORY RELIEF

113.    Plaintiffs incorporate by reference the foregoing allegations as if set fully herein.

114.    Plaintiffs, on behalf of themselves and all others similarly situated, contend that Defendant's sale of laminate wood flooring products in Massachusetts does not comply with the

CARB standards.  On information and belief, Defendant contends that its sale of laminate wood flooring products complies with the CARB standards.

115.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all Class members, seek the following relief against Defendant:

A.      An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper representatives of the Class;

B.      A finding and declaration that Defendant's policies and practices of labeling and advertising the laminate wood products it sells in California as CARB compliant are unlawful pursuant to Title 17 of the California Code Regulations, §§ 93120-93120.12;

C.      A finding and declaration that Defendant's policies and practices of distributing and/or selling laminate wood products in California with formaldehyde emissions that violate the CARB standards are unlawful pursuant to Title 17 of the California Code Regulations, §§ 93120-93120.12;

D.      Injunctive relief prohibiting Defendant from continuing to distribute and/or sell laminate flooring products that violate the CARB standards;

E.      Restitution of all money and/or property that Plaintiffs and Class members provided to Defendant for the purchase and installation of Defendant's Chinese-made composite wood flooring products;

F.      Damages in an amount to be determined at trial for damages including actual, compensatory, and consequential damages incurred by Plaintiffs and Class members;

- 26 -

G.    An award to Plaintiffs and Class members of reasonable attorneys' fees and costs; and

H.    An award of such other and further relief as this Court may deem appropriate.

## IX.    DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues so trouble.

DATED:  March 9, 2015

HAGENS BERMAN SOBOL SHAPIRO LLP


By: /s/ Kristen A. Johnson
     Kristen A. Johnson
     BBO #: 667261
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone:  (617) 482-3700
Facsimile:  (617) 482-3003
kristenjp@hbsslaw.com


STEVE W. BERMAN
ARI Y. BROWN
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
(206) 623-7292
steve@hbsslaw.com
ari@hbsslaw.com

*Attorneys for Plaintiffs and the Proposed Class*